## No. 13,037.

LEWIS W. LYONS vs. DANIEL S. CARROLL ET AL.

### SYLLABUS.

While it is true that plaintiff was innocent of the charge brought, yet, as it was not satisfactorily made to appear that the defendants instigated the prosecution and had plaintiff imprisoned, they were not liable in damages.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Gurley & Mellen* for Plaintiff and Appellant.

*Ambrose Smith* for Defendants and Appellees.

Submitted on briefs May 19, 1899.
Opinion handed down June 12, 1899.
Rehearing refused June 26, 1899.

The opinion of the court was delivered by

BREAUX, J. Plaintiff sues Carroll, Kerwin, and DeRance, the two latter police officers, in damages in the amount of $5040, for illegal and malicious arrest, imprisonment, and for slanderous charges, he avers, the defendants brought against him.

He avers further that a diamond stud was stolen from one of the defendants, Daniel S. Carroll, at the "Little Diamond Saloon," in New Orleans, between midnight and sunrise on July 9th, 1895.

He alleges that he was not present when the crime was committed; that Carroll was, at the time, with one Howard *alias* "Kid Murphy," and one McGrath, all of whom had been drinking together; that Carroll reported the theft to a number of police officers and detectives, including Sergeant Walsh, Ferdinand DeRance and Richard Kerwin, and gave them the names of those whom he suspected of having committed the theft, and that he maliciously included his (Lyons') name as one of the offenders, although he knew that Lyons was not connected with the crime, and was not present when the stud was stolen.

He alleges further that he, (plaintiff), in company with Kerwin and DeRance, met Carroll in the evening on the day the theft was committed, and Kerwin asked Carroll: "Is this" (pointing to the petitioner), "one of the parties?" meaning by the question to ask if plaintiff was one of the parties present when Carroll's stud was stolen, to which Carroll, understanding the meaning of the question, answered: "Yes"; that petitioner then turned to Carroll and said: "Carroll, you well know that I had nothing to do with the stealing of your stud, and that I was not with you when the theft was committed," to which Carroll replied, "Never mind, I will fix you,"

and walked away. Thereupon Kerwin announced to him that he was under arrest, and that notwithstanding his protests, he was placed under arrest, taken to the Third Precinct station and imprisoned. That during the night and part of the next day, he greatly suffered owing to the filth and stench in the cell, also that his feelings were greatly humiliated.

Plaintiff avers that he is the father of a family and a law abiding citizen, and that his name and reputation have always been good.

The defendants filed exceptions. The exception of Kerwin and De-Rance was sustained and that of Carroll was overruled. Carroll filed an answer.

A number of witnesses were heard on the trial.

The judge of the District Court held, in substance, that defendant, Carroll, did not accuse plaintiff of the theft; and therefore rejected plaintiff's demands.

1st. Of course, no man has a right to institute proceedings against another unless he has good cause to believe that the facts and the law will sustain the action. In this case we soon discovered, that which is made manifest by the testimony, that there was no probable cause justifying an action. The plaintiff was entirely innocent and absolutely blameless. The officers found out in some way that he had been drinking with the defendant, on the night of the theft, but prior to the loss of the stud, and therefore, concluded properly to investigate the matter. After some inquiry had been made, they determined to arrest plaintiff. In this there was an error committed. But we have not found that it was traced to defendant, Carroll, with sufficient certainty, to warrant a judgment in damages.

We have seen that the charge set forth in the petition is that defendant, Carroll, had reported the theft to a number of police officers, naming them. He was, it appears, well acquainted with Sergeant Walsh. This sergeant swore positively that Carroll did not report Lyons to him, as alleged. The same is true of DeRance and Kerwin, as well as Long; all three members of the police.

But it is contended that the affidavit made against Lyons was made at the instance of Carroll.

In our examination of the case we turned to the affidavit itself, and found that in the body of it the name of Lyons does not appear, although it was doubtless covered by the words "et al"; still the fact

that the name of Lyons was not mentioned in the body of the affidavit is a little out of the ordinary, we think.

The affidavit was made on information received, for the reason that Carroll was still under the influence of liquor at the time, and was not in a fit condition to make the affidavit, we are informed. It bears the date of July 10th, 1895.

The fact that Carroll was not in a fit condition to make the affidavit is not without some significance in the matter.

It appears that Carroll, who had been imprisoned, appeared before the Recorder, and after hearing his evidence, the Recorder, as is usual, directed the police officer present to make the affidavit, as Carroll was too drunk to make it himself.

There is some confusion and uncertainty in regard to the date of the affidavit.

The judge of the District Court, who heard and saw the witnesses, in his opinion, upon which he bases his judgment, says that the defendant (Carroll's) testimony contradicts Simone, (a police officer), not by mere denial, but by statement of facts and positive assertion, in manner and style, that seemed to him convincing. "One fact that is most convincing to my mind that defendant did not act or incite Mr. Simone to accuse plaintiff is that it is shown that on the morning of the 9th, the day before Simone made the affidavit, defendant was ashamed of the notoriety into which the robbery of his diamond stud was bringing him, and that he had given up all idea of making efforts to recover it. The newspapers had made publications of accounts of the robbery, and it was becoming a sore subject to him. Captain Beck's testimony shows this, and defendant corroborates him, so that it seems to be certain that on the 10th of July, defendant was not in a prosecuting frame of mind. He was, at that time, the General Auditor of the Telephone Company, with his office in the Telephone building, a position of trust and responsibility. He was a man of family and of means, and considering his mortification and shame, for what had happened to him on the night of the robbery, it may be accepted as the truth, when he declares that his purpose was, to let the matter of the robbery pass, and to pocket his loss in silence.

"That officer Simone intended to speak falsely, I do not believe. He was testifying in the summer of 1896 as to the occurrences of July, 1895. His duties as a police officer bring him in contact with

so many criminal arrests, prosecutions, etc., that he may well be excused if his memory has failed him. He evidently got July 10th mixed up with July 18th, and on July 9th or July 10th, it is an impossibility, under all the evidence, that the defendant could have singled out Lyons, the plaintiff, and requested Simone to make the affidavit."

We have considered this case as well as we could, and have not found grounds upon which to base a judgment for damages. It was certainly unfortunate for the plaintiff; but this is not enough in itself to find damages in the absence of positive proof of a wrong committed or a wrong intended by defendant.

Plaintiff had been with McGrath and with defendant up to a short time before the theft was committed. The officers hearing of this, sought McGrath. Having failed to find him, they found Lyons, and while talking with him, they chanced to meet Carroll. During the few words that passed, it is said that Carroll did not attempt at that time to exonerate Lyons. Carroll explained this by saying, as a witness, that he did not know upon what information Lyons had been arrested; that he was a stranger to Lyons, and for that reason answered as he did, which was in effect that he would see him the next day before the court.

In this we do not discover malice or the intention to have Lyons arrested, as alleged in plaintiff's petition.

On the 18th of July, 1895, when Carroll testified before the Recorder, he said to that officer that Lyons was not present. His evidence exonerated and acquitted the plaintiff of the charge of larceny, which had been preferred without his authority, he swears.

Considering, further, that the arrest of plaintiff was, in our view, the arrest by the detectives, and not at the instances of the defendant, Carroll, we must conclude as did the judge of the District Court, that plaintiff has no grounds upon which he can be allowed damages. Defendant was scarcely in a condition to be responsible for affidavits made and other steps taken in the matter.

For reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.